UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SUZANNE SWIERC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-1897 |
| | ) | |
| GEOFFREY S. MEARNS, PRESIDENT | ) | |
| OF BALL STATE UNIVERSITY, | ) | |
| in his official and individual capacities, | ) | |
| | ) | JURY TRIAL REQUESTED |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**Introductory Statement**

1.     Suzanne Swierc, formerly an employee at Ball State University, has been fired from her employment solely because, on a private Facebook post, she stated that although Charlie Kirk's death was a tragedy and although she prays for his soul, his death is a reflection of the hatred, fear, and violence that he sowed. She stressed that this in no way excused his death.  Although this is clearly an opinion on a controversial subject, it is fully protected by the First Amendment.  Her firing was unconstitutional, and she is entitled to declaratory and injunctive relief and her damages.

**Jurisdiction, Venue, and Cause of Action**

2.     The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

1

5.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6.     Suzanne Swierc is an adult resident of Delaware County, Indiana.

7.     Geoffrey S. Mearns is the duly appointed President of Ball State University.  He is sued in both his official and individual capacities.

**Factual Allegations**

8.     Between August 9, 2023 and September 17, 2025, Ms. Swierc was employed by Ball State University in an administrative, non-faculty role.

9.     She held the title Director of Health Promotion and Advocacy, within the Division of Student Affairs.  Her department included three full-time staff members in addition to Ms. Swierc: the Associate Director, the Assistant Director, and the Administrative Assistant. Her office developed health and wellness programming for University students, including a program that provided survivor support and victim advocacy for students who had experienced intimate partner violence.

10.    She was not a member of faculty, and most of her time was spent developing health and wellness programming, which was usually then delivered by other, more student-facing staff members.

11.    On September 10, 2025, political commentator Charlie Kirk was shot and killed while speaking to a group of students on a Utah college campus.

12.    Mr. Kirk was an extremely divisive figure, known for making inflammatory statements regarding a host of political and social issues.  He stated, for example, that stoning gay people to death was "God's perfect law when it comes to sexual matters."  In the wake of

2

a mass school shooting, he opined that "some gun deaths" every year are worth it, to protect the Second Amendment.  He spoke against non-Christian religions, including, for example, saying that "Islam is the sword the left is using to slit the throat of America." And he frequently espoused anti-minority viewpoints, particularly regarding African American people.  For example, regarding black women in positions of leadership such as Supreme Court Justice Ketanji Brown Jackson, he said "you do not have the brain processing power to otherwise be taken really seriously. You had to go steal a white person's slot to go be taken somewhat seriously."

13.    Following his death, many individuals discussed, via social media and elsewhere, their views that two things could be true simultaneously: that Mr. Kirk's killing was wrong and abhorrent, and also that the opinions and beliefs he espoused were based on prejudice, bigotry, and hate, and led to violence.

14.    Ms. Swierc is among those people who believe both that Mr. Kirk's killing was wrong and that his views were hateful and abhorrent.

15.    Ms. Swierc is a practicing Catholic, and she views many issues of social justice through her faith.

16.    As she read news articles and scrolled through social media, she felt compelled to provide her own views on Mr. Kirk's political activism, his death, and how her faith instructed her to respond.

17.    Ms. Swierc has maintained a Facebook page since 2007.

18.    On September 10, 2025, and for a long period preceding that, her Facebook page was set to "private."  Her page was not retrievable by searching for her by name, and only persons who had a mutual Facebook friend could request to be added as one of Ms. Swierc's

friends.  The only personal detail she provided through her profile was her name: her profile

did not list her city, employer or past employers, relationship status, birthday, or any other

personal information.  These have remained the settings of her Facebook page since

September 10, 2025.

19.     At approximately 8:00 p.m. on September 10, 2025, from her home, from her own

electronic device, and on her own personal time, she posted the following to her Facebook

page, using "private" settings that allowed only her Facebook friends to see it:



**Suzanne Swierc**
Sep 10 · 🔒

Let me be clear: if you think Charlie Kirk was a
wonderful person, we can't be friends.

His death is a tragedy, and I can and do feel for his
wife and children.

I believe in the Resurrection, and while it's difficult, I
can and do pray for his soul.

Charlie Kirk's death is a reflection of the violence,
fear, and hatred he sowed. It does not excuse his
death, AND it's a sad truth.

The shooting is a tragedy, and I can and do feel for a
college campus experiencing an active shooter
situation.

The deaths of Melissa and Mark Hortman, the
children shot and killed in Minneapolis last month,
and the children shot in Colorado today are all
tragedies that also deserve your attention.

Charlie Kirk excused the deaths of children in the
name of the second amendment.

20.     Although Ms. Swierc does not know who did so, someone obtained a screenshot of the

above Facebook post, highlighted portions of it, and joined it with Ms. Swierc's description

from the Ball State University staff directory.  That image was then shared on numerous public-facing social media sites.

21.    It was also submitted to Indiana Attorney General Todd Rokita's "Eyes on Education Portal," in which a special section is dedicated to disseminating posts made by other people related to Mr. Kirk's death that, in the Attorney General's estimation, "celebrate or glorify violence."  According to the information on the Portal, "verified submissions" would be published on and disseminated via the Attorney General's website.  *See* https://www.in.gov/attorneygeneral/education-liberty/ (last accessed September 20, 2025).

22.    Attorney General Rokita has made clear that the purpose of the portal is not to conduct any investigation into alleged wrongdoing, but rather to widely disseminate content that the Attorney General views as "celebrating or glorifying the tragedy."  The Attorney General has indicated: "Let me be clear: my office is not conducting investigations into these individuals. Our goal is to provide transparency, equipping parents with the information they need to make informed decisions about their children's education." *See* https://events.in.gov/event/attorney-general-todd-rokita-exposes-public-posts-from-educators-glorifying-charlie-kirks-assassination?utm_campaign=widget&utm_ medium=widget &utm_source=State+of+Indiana, (last accessed September 20, 2025).

23.    Attorney General Rokita shared the image on the "Eyes on Education Portal," where it remains as of filing of this complaint.  He also shared it on his official Facebook page.

24.    Ms. Swierc first learned of the existence of this image, and its dissemination across social media sites, on the morning of Friday, September 12, 2025.

25.    She was on previously scheduled leave that day, and when she first looked at her phone at approximately 6:30 a.m., she had already received missed calls, voicemails, and text

messages from strangers harassing her about the contents of the image that was circulating. She received similar messages and voicemails on her work email and phone.

26. She texted her supervisor to let him know that a post that she had made on her private Facebook page was being circulated alongside her picture and biographical blurb from the Ball State website.  She had a brief phone call with him later that morning, when she told him she had received a threat of violence and other harassing messages.

27. At around noon, Ms. Swierc spoke to her supervisor by phone, and he indicated that Ball State employee relations wanted to schedule a meeting for the morning of Monday, September 15, 2025.

28. Ms. Swierc did not know what that meeting would cover, but she had a general understanding that they would discuss next steps regarding the situation.

29. She became aware at some point that afternoon that Attorney General Todd Rokita had re-posted the edited image, including her Ball State employee directory entry, to various social media channels.

30. Ms. Swierc went to work on the morning of Monday, September 15, 2025, and attended the scheduled meeting.

31. In attendance were Ms. Swierc, her supervisor, a peer from the University staff that Ms. Swierc was permitted to invite for support, and the head of employee relations, Melissa Rubrecht.

32. Ms. Rubrecht asked about Ms. Swierc's safety, as Ms. Swierc had received numerous harassing messages, including one suggesting that Ms. Swierc should "get what Charlie Kirk got."  At Ms. Rubrecht's request, Ms. Swierc provided information regarding the

privacy settings of her Facebook page and the post, how many Facebook friends she had, and what personal details she disclosed in her profile.

33. Ms. Rubrecht indicated that the University would be looking into whether this would be considered speech made by Ms. Swierc in her private or employee capacity. Neither Ms. Rubrecht, nor anyone else, discussed the possibility of Ms. Swierc being subject to discipline.

34. For the rest of September 15th, and the morning of September 16th, Ms. Swierc went to work and did her job as usual.

35. On the afternoon of September 16th, Ms. Swierc took four hours of paid time off to take care of medical needs.

36. Ms. Swierc went to work as usual on Wednesday, September 17th.

37. At around noon on September 17th, Ms. Swierc's supervisor informed her that she and he were required to attend a meeting with employee relations at 4:00 that day.

38. He indicated that he did not have details regarding the meeting, aside from an indication that Ms. Swierc was not permitted to bring legal counsel and that she would likely not be required to speak.

39. In a call with Ms. Swierc, Ms. Rubrecht also instructed Ms. Swierc that she was not permitted to bring legal counsel but could bring a peer for support.

40. Ms. Swierc, her supervisor, a University peer staff support person, and Ms. Rubrecht attended the 4:00 meeting.

41. Ms. Rubrecht informed Ms. Swierc that her employment at Ball State University was being terminated, and Ms. Swierc was provided with a letter explaining and memorializing that termination. That letter is attached as **Exhibit 1**.

42.    That letter was signed by Ball State University President Geoffrey S. Mearns, who indicated, "I have decided to terminate your employment with Ball State University, effective immediately."  President Mearns was personally responsible for Ms. Swierc's termination.

43.    The letter indicates that the sole reason for Ms. Swierc's termination was her Facebook post.

44.    Ms. Rubrecht informed Ms. Swierc that there was no possibility of challenging or appealing the termination.

45.    The meeting lasted approximately five minutes.

46.    Mr. Kirk's political advocacy, and his death, represent issues of public concern, and Ms. Swierc's Facebook post addressed issues of public concern.

47.    Her Facebook post had nothing to do with her employment and was in no way critical of her superiors or their stated policies.

48.    Ms. Swierc's termination resulted directly and exclusively from the exercise of her expressive rights.

49.    Ms. Swierc's Facebook post was made as a private citizen and not pursuant to any professional duties or responsibilities that she had as an employee of Ball State University.

50.    Ms. Swierc's expressive activity did not hinder and was not likely to hinder her ability to do her job or her office's proper functioning.

51.    Ms. Swierc's expressive activity did not hinder and was not likely to hinder in any way Ball State's ability to perform its mission or the educational or workplace environment of the University.

52. As a result of her termination, Ms. Swierc has suffered emotional, financial, and other damages.

53. Geoffrey Mearns has, at all times, acted or refused to act under color of state law.

54. The actions of the defendant were malicious and/or made with callous indifference to Ms. Swierc's rights.

**Legal Claim**

55. The termination of Ms. Swierc violates the First Amendment to the United States Constitution.

**Jury Trial Demand**

56. The plaintiff requests a trial by jury on all issues so triable.

**Request for Relief**

   **WHEREFORE,** the plaintiff requests that this Court do the following:

1. Accept jurisdiction of this cause and set it for hearing.

2. Declare that the defendant has violated the rights of the plaintiff for the reasons described above.

3. Issue a permanent injunction requiring the defendant to expunge all records of the plaintiff's termination, including in her permanent personnel file.

4. Award the plaintiff her damages, including nominal, compensatory, and punitive damages.

5. Award the plaintiff her costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

6. Award all other proper relief.

                                        Stevie J. Pactor
                                        Joshua T. Bleisch
                                        Kenneth J. Falk
                                        Gavin M. Rose
                                        ACLU of Indiana

1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
spactor@aclu-in.org
jbleisch@aclu-in.org
kfalk@aclu-in.org
grose@aclu-in.org

*Attorneys for the plaintiff*